# CASES

# SUPREME JUDICIAL COURT,

## LORD vs. LORD.

A father conveyed to his son, 132 acres of land in fee, and an interest in his dwellinghouse and barn standing on other land, in the following terms : "and also that the said J. shall have *the privilege* of the eastern part of the dwelling-house, one lower room, bed-room, and cellar and chamber, and one fourth part of the barn, so long as they shall stand, *to his use.*" *Held,* that it conveyed merely a *personal privilege* to the son, which was not *assignable* by him to a stranger.

A reservation to the grantor, in the same deed, of a life estate, and a subsequent relinquishment of the same on the back of the deed, were both held to apply to the lot of land, and not to the privilege in the house and barn.

THIS was a writ of entry, brought to recover possession of a part of a dwellinghouse, situated in *Lyman,* in this county, and was tried upon the general issue, *September* term, 1834, before the Chief Justice.

The demandant, to prove the issue on his part, read a deed from *Samuel Lord* to *James Lord,* dated *Feb.* 15, 1817, conveying one hundred and thirty-two acres of land — following which were these words — " and also that the said James shall have the " privilege of the eastern part of the dwellinghouse, and one " lower room, bed-room, and cellar and chamber, and one fourth " part of the barn, to be the western part, so long as they shall " stand, to his use, excepting and reserving to myself, the use and " improvement of all of the above during my natural life."

On the back of this deed, was a release, dated *March* 28, 1829, from *Samuel Lord* to *James Lord,* of all his right and interest therein reserved.

The demandant then read a deed from *James Lord* to himself, dated *June* 27, 1826, conveying all his interest in the house aforesaid. Also, deeds from *Samuel Lord* to the demandant, and *Samuel Lord* to *Aaron Lord*, both dated *March* 14, 1829 — the first conveying 100 acres of land, and the other conveying all said *Samuel's* homestead farm, except what he had before conveyed to his sons *James* and *Lyman Lord*.

It was proved, that the demandant took possession of the demanded premises at the time of his deed in 1826, and continued to occupy the same until *October*, 1830, when he removed with his family to *Bradford*, in the County of *Penobscot* — and that while thus in the occupation he made considerable repairs upon the house.

The defendant, on his part, read a deed from *Samuel Lord* to *Solomon Hill*, dated *October* 10, 1828, of the homestead of the said *Samuel*, containing 200 acres of land — and deeds of the same from said *Hill* to *Aaron Lord* and the demandant, both dated *March* 28, 1829, conveying to the former 100 acres, including the demanded premises, upon certain conditions; among which were the support of the said *Samuel* and wife during their lives, and the payment of certain sums to their daughters — and conveying to the demandant 100 acres of land, "being the same premises which said *Samuel Lord* conveyed to said *Lyman Lord,* *March* 14, 1829."

He also read a release from the demandant to his father, *Samuel Lord*, dated *March* 14, 1829, of all right, title and interest, which he had or might have in the estate of the said *Samuel*, whether real or personal.

The defendant then offered evidence, which was objected to by the demandant, but admitted by the Court, that, the witness was present at the house of *Samuel Lord*, on the 27th and 28th days of *March*, 1829, with *Solomon Hill*, *Aaron Lord* and others; between whom much conversation was had relative to the difficulties then existing between them, and the mode of settling them; *Lyman Lord* having commenced an action against *Samuel Lord* for covenant broken upon his deed of *March* 14, 1829, on account of said *Samuel Lord's* having conveyed the same land

Lord *v.* Lord..

previously to *Solomon Hill*, by his deed of *October* 10, 1828. The witness further testified, that on the second day, an arrangement was effected, and that the deeds from *Solomon Hill* to *Aaron Lord* and the demandant, were thereupon made — that the demandant appeared to understand it, and read the deed from *Hill* to his brother; and remarked, that he did not intend to live where he then did.

Another witness testified, that he was present at the above arrangement — that he heard nothing said about that part of the house which the demandant had occupied, and that the demandant's object seemed to be to secure his title to the 100 acre lot conveyed to him by his father, which was wild land — and that he understood the agreement, at the time to be, that the demandant was to have 100 acres of land, and that *Aaron Lord* was to have the residue of his father's property.

Upon this evidence a nonsuit was ordered, which was to stand or be taken off, and the cause stand for trial, as the opinion of the whole Court should be upon the case as reported by the presiding Judge.

*N. D. Appleton*, for the plaintiff.

The first question is, what estate did *James Lord* receive under his deed from *Samuel Lord*. We contend that it was a freehold estate — an estate for life, determinable upon the happening of a subsequent event. *Co. Litt. L.* 1, 426; *Dane's Abr. ch.* 130, *a.* 1, § 8; 4 *Com. Dig. Estates, E.* 1; 1 *Cruise's Dig.* 60; 4 *Kent's Com.* 26. *Rutty* v. *Tyler*, 3 *Day's Rep.* 470; *Heard* v. *Cushing*, 7 *Pick.* 169.

2. The estate conveyed by the foregoing deed was *real estate*, and may properly come under either of the terms, *lands, tenements* or *hereditaments*. 2 *Bl. Com.* 16, 20.

Such a construction should be given *to the deed* as will carry into effect the intention of the parties, if it can be done consistently with the rules of law. *Bridge* v. *Wellington*, 1 *Mass.* 219; *Wallis* v. *Wallis*, 4 *Mass.* 135.

The intention here was manifestly to convey something more than a mere chattel in trust. The conveyance is of a part of a dwellinghouse, with the *cellar, so long* as they shall stand. The

Lord *v.* Lord.

estate conveyed has the appropriate and necessary qualities of real estate — *immobility,* and a sufficient legal indeterminate *duration.* *2 Bl. Com.* 386.

The land under the part of the house conveyed, if not clearly included in the terms used in the deed, may pass as appurtenant to it. *Doane* v. *Broad-street Association in Boston,* 6 *Mass.* 332; *Clapp* v. *Draper,* 4 *Mass.* 266; *Howell* v. *McCoy,* 3 *Rawle,* 256; 2 *Term Rep.* 498; 2 *Coke's Rep.* 526; *Cro. Eliz.* 114; 4 *Com. Dig. Grant, E.* 5, 6, 9.

3. A *real action* is the proper and only effectual remedy for the demandant. *Jackson on Real Actions,* 1.

4. The demanded premises were not released to *Samuel Lord* by the deed of the 14th of *March,* 1829. It does not on its face purport to convey them, and there is nothing in the attending circumstances rendering such a construction of the deed necessary. As to the rule of construction he cited, *Adams* v. *Frothingham,* 3 *Mass.* 352; *Worthington* v. *Hilyer,* 4 *Mass.* 205; *Watson* v. *Boylston,* 5 *Mass.* 411 — and commented at length on the facts to show that the premises were not intended to be released.

It was intended to bar any future claim of *Lyman Lord,* as an heir at law to his father's estate — and such would be its legal effect and operation. *Quarles & al.* v. *Quarles,* 4 *Mass.* 680; *Kenney et ux.* v *Tucker,* 8 *Mass.* 143.

5. The demandant is not estopped to claim the premises by reason of his being present on the 28th of *March,* 1829, when *Solomon Hill* conveyed to the tenant. *Henderson* v. *Overton,* 2 *Yerger,* 394; *American Jurist, No.* 24, *p.* 439; and *No.* 23, *p.* 150; *Eagle* v. *Burns,* 5 *Call,* 463.

6. But whether the demandant knew what the deed from *Samuel Lord* to the tenant contained, was a question of fact which should have been submitted to the jury.

*E. Shepley* and *D. Goodenow,* for the tenant, contended, 1. that the deed from *Samuel Lord* to *James Lord,* of *Feb.* 15, 1817, did not convey such an interest as could be recovered in a *real action.*

2. That the interest conveyed was a mere *personal privilege,* and was not *assignable.*

3. That it was relinquished by the demandant to *Samuel Lord*, by his deed of *March* 14, 1829.

4. That the demandant was *estopped* to claim the premises, by being present at the time of their conveyance to the tenant by *Hill*, and making no objection thereto.

They cited the following authorities : *Miller* v. *Miller*, 4 *Pick.* 249 ; 7 *Pick.* 169 ; *Safford* v. *Annis*, 7 *Greenl.* 169 ; *Thompson & al.* v. *Androscoggin Bridge*, 5 *Greenl.* 62 ; *Wood* v. *Barstow*, 10 *Pick.* 368 ; *Clinton* v. *Fly*, 1 *Fairf.* 292.

PARRIS J. — It may well be doubted whether by the deed of the 5th of *February*, 1817, from *Samuel Lord* to *James Lord*, the latter took any thing more in the dwellinghouse than a personal privilege of occupancy, not assignable or transferable in any manner, so that a stranger might by possibility come into the possession. The conveyance is from father to son of one hundred and thirty-two acres of land in fee, followed by this additional clause : " And also, that the said *James* shall *have the privilege* of the eastern part of the dwellinghouse, one lower room, bed room and cellar and chamber, and one fourth part of the barn, so long as they shall stand, to *his use*." The dwellinghouse and barn were not situated on the lot conveyed in fee, but on the homestead still remaining in the possession of the grantor.

Considering the circumstances under which the conveyance was made, the affinity of the parties, that the grant was from father to son, and the privilege to be enjoyed by the latter was in the dwellinghouse of his father, we should not think it a constrained construction to say, that the privilege mentioned in the latter clause of the descriptive part of the deed, was available only to *James*, and could not by him be assigned so as to be operative in favor of a stranger. Under such a construction, we should find no difficulty arising from the habendum part of the deed. That would apply to " the aforegranted and bargained premises," the one hundred and thirty-two acres conveyed in fee, and it was evidently intended so to apply. Neither does the release of *Samuel*, on the back of his deed to *James*, have any more extensive operation. By a reservation in that deed, *Samuel*, the grantor, had a right to the use and improvement of the property conveyed,

during his life, and by the release he relinquishes that right to *James*, the grantee. This was probably intended to apply only to the land conveyed, *viz.* the one hundred and thirty-two acres. But whether it was so restricted, or applied also to the privilege in the house, the release from *Samuel* was not until the 28*th* of *March*, 1829, long after *James'* quit claim deed to *Lyman*, so that *Lyman* could derive no advantage from any subsequent conveyance from *Samuel* to *James.* By a release, no right passed but the right which the releasor hath at the time of the release made. *Co. Litt. sec.* 446 ; *McCracken* v. *Wright,* 14 *Johns.* 194 ; *Jackson* v. *Hubble,* 1 *Cowen,* 613 ; *Jackson* v. *Winslow,* 9 *Cowen,* 13.

There might be sufficient reasons why the son would be accommodated by the father, most cheerfully, with the use of a part of his dwellinghouse, when the like accommodation afforded to a stranger would be an annoyance hardly to be endured. The situation and circumstances of the contracting parties may properly be considered in giving a construction to the instrument. *Wood* v. *Barstow,* 10 *Pick.* 368 ; *Clinton* v. *Fly,* 1 *Fairf.* 292.

But if the interest which *James Lord* took in the dwellinghouse, under the deed from *Samuel Lord,* to him, was an assignable interest, as contended by the plaintiff, then it passed to the plaintiff on the 27*th* of *June,* 1826, by a release or quit claim deed to him from *James Lord,* of that date. It was an interest in the estate of which *Samuel Lord* held the fee. This interest or easement the plaintiff released to *Samuel,* his father, the owner of the estate, by deed on the 14*th* of *March,* 1829, and *Samuel,* in consideration thereof, on the same day, conveyed to the plaintiff, one hundred acres of land in fee.

We think it is manifest, from all the papers in the case, that the release of *Lyman Lord,* before mentioned, was intended to discharge the estate from this incumbrance. It is said that such could not have been the understanding of the parties, because *Samuel Lord* was not at the time owner of the fee, having previously conveyed to *Hill.* For what purpose the deed to *Hill,* the son in law of *Samuel Lord,* of the 10*th* of *October,* 1828, was made, is very questionable ; — but certain it is, that *Samuel*

*Lord,* the grantor, continued in possession, and subsequently exercised the same ownership over the property as he had before, and on the 14*th* of *March,* 1829, when he received the release discharging the easement, conveyed to *Lyman,* in consideration thereof, a lot of land, which was included in the previous deed to *Hill,* and which conveyance *Hill* likewise confirmed to *Lyman* by deed, on the 28*th* of the same month. *Lyman Lord,* by taking a deed from his father, treated the estate as belonging to the latter, as distinctly after the conveyance to *Hill,* as before ;— *Samuel,* the grantor, by all his acts, treated *Hill's* deed as a nullity, and *Hill* himself claimed no right under it, but conveyed to *Lyman* and *Aaron,* in accordance with their agreement with *Samuel.*

The parties then, in making use of the language in *Lyman's* release to *Samuel,* " *all right, title and interest in the estate of Samuel Lord,*" must have referred to this easement or privilege in the house, for *Lyman* then had no other right or title or interest in *Samuel Lord's* estate, and it is not pretended that *Samuel* had any other real estate, except that described in the deed to *Hill,* of which the house constituted a part. It follows, therefore, that the plaintiff has no cause of action, and the nonsuit is confirmed.